GEORGE E. HAYS (Bar No. 119904)
236 West Portal Avenue, #110
San Francisco, CA 94127
Telephone: (415) 566-5414
Email: georgehays@mindspring.com

REED ZARS (Wyo. Bar 6-3224)
Attorney at Law
910 Kearney St.
Laramie, WY 82070
307-745-7979
rzars@lariat.org
*pro hac vice* application pending

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DINÉ CARE and NATIONAL PARKS CONSERVATION ASSOCIATION,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LISA P. JACKSON, in her official capacity as EPA Administrator,<br><br>Defendants,<br><br><br>SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT & POWER DISTRICT,<br><br>Intervenor-Defendant. | Case No. C 12-03987 JSW<br><br>SECOND AMENDED JOINT CASE MANAGEMENT STATEMENT & ~~PROPOSED~~ ORDER |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the Standing Order for All Judges of the Northern District of California dated July 1, 2011 and Civil Local Rule 16-9.

1. <u>Jurisdiction & Service</u>

Plaintiffs' complaint in this Clean Air Act Section 304(a) citizen suit, 42 U.S.C. §7604(a), seeks an order compelling EPA to promulgate federal air pollution control regulations for the

Navajo Generating Station ("NGS"), a coal-fired power plant located near Page, Arizona, approximately 12 miles from the eastern edge of Grand Canyon National Park.

Plaintiffs assert that this Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. §7604 and 28 U.S.C. §§1331 and 1361. No issues exist regarding personal jurisdiction or venue, and no parties remain to be served.

2.  Facts

Plaintiffs allege the following facts in their Complaint. Defendants and Intervenor-Defendant do not join in the recitation of facts.

NGS is a 2,250 megawatt coal-fired power plant located on Navajo Nation tribal land approximately 12 miles from the eastern edge of Grand Canyon National Park. NGS is the largest coal-fired power plant on the Colorado Plateau, and the eighth largest in the country. Although located on Navajo tribal land, NGS is owned and operated exclusively by non-tribal utilities including Salt River Project Agricultural Improvement & Power District, Arizona Public Service Company, Tucson Electric Power, Bureau of Reclamation, Los Angeles Department of Water and Power and Nevada Energy. On an annual basis, NGS discharges into the air of the Southwest over 34,000 tons of nitrogen oxides ($NO_x$), 1,900 tons of particulate matter (PM), 3,690 tons of sulfur dioxide ($SO_2$), and 20 million tons of carbon dioxide ($CO_2$).

In 1977, Congress amended the Clean Air Act to provide "Class I" protection to national parks and wilderness areas. "Class I" status means, among other things, that existing visibility impairment in mandatory Class I national parks and wilderness areas must be eliminated. Visibility impairment is measured in deciviews. A 1.0 deciview reduction in visibility is perceptible to the human eye. According to EPA's 1999 regional haze regulations, "A single source [of air pollution] that is responsible for a 1.0 deciview change or more should be considered to 'cause' visibility impairment." 40 C.F.R. Part 51, Subpart P, Appendix Y—Guidelines for BART Determinations Under the Regional Haze Rule, Section III A. 1.

The National Park Service has determined through air dispersion modeling that air pollution from NGS alone impairs visibility by over 39 cumulative deciviews across at least eleven Class I national parks and wilderness areas in the Southwest, 39 times greater than EPA's

1  threshold used to determine if a single source of pollution causes visibility impairment.  Class I
2  areas impacted by emissions from NGS include Grand Canyon National Park (AZ), Capitol Reef
3  National Park (UT), Bryce Canyon National Park (UT), Arches National Park (UT),
4  Canyonlands National Park (UT), Mesa Verde National Park (CO), Petrified Forest National
5  Park (AZ), Sycamore Canyon Wilderness (AZ), Pine Mountain Wilderness (AZ), Mazatzal
6  Wilderness (AZ) and Zion National Park (UT).
7  3.      Legal Issues
8         The citizen suit provision of the Clean Air Act, Section 304(a)(2), 42 U.S.C. §7604(a)(2),
9  provides that citizens may commence a civil action against the Administrator of EPA "where
10 there is alleged a failure of the Administrator to perform any act or duty under this chapter which
11 is not discretionary with the Administrator."  Furthermore, "[t]he district courts of the United
12 States shall have jurisdiction to compel (consistent with paragraph (2) of this subsection) agency
13 action unreasonably delayed . . . ."  *Id*., Section 304(a), 42 U.S.C. §7604(a).
14         The visibility protection provision of the Clean Air Act at 42 U.S.C. §7491(b)(2)(A)
15 requires EPA to issue regulations that include a requirement for certain major sources of air
16 pollution that cause or contribute to visibility impairment in any mandatory Class I national park
17 or wilderness area, such as NGS, to "procure, install, and operate, as expeditiously as practicable
18 (and maintain thereafter) the best available retrofit technology, as determined by the State (or the
19 Administrator in the case of a plan promulgated under section 7410(c) of this title) for
20 controlling emissions from such source for the purpose of eliminating or reducing any such
21 impairment."  As a result of this Congressional mandate, EPA promulgated regional haze
22 regulations at 40 C.F.R. §51.308(e)(1)(ii), which requires that best available retrofit technology
23 ("BART") be established for each "BART-eligible" source that emits "any air pollutant which
24 may reasonably be anticipated to cause or contribute to any impairment of visibility in any
25 mandatory Class I Federal area."
26        NGS is located on tribal lands.  As a result, EPA's visibility protection obligations with
27 respect to this facility are set forth in Clean Air Action Section 301, 42 U.S.C. §7601, and in
28 EPA's tribal authority rule.  Pursuant to the tribal authority provision of the Clean Air Act,

-3-

Section 301(d)(4), 42 U.S.C. §7601(d)(4): "In any case in which the Administrator determines that the treatment of Indian tribes as identical to States is inappropriate or administratively infeasible, the Administrator may provide, by regulation, other means by which the Administrator will directly administer such provisions so as to achieve the appropriate purpose."

In 1998, EPA issued its Clean Air Act tribal authority rule pursuant to 42 U.S.C. §7601(d)(4), 63 Fed. Reg. 7254, 7271 (February 12, 1998). According to the tribal authority rule at 40 C.F.R. §49.11, the EPA Administrator "[s]hall promulgate without unreasonable delay such Federal implementation plan provisions as are necessary or appropriate to protect air quality, consistent with the provisions of sections 304(a) and 301(d)(4), if a tribe does not submit a tribal implementation plan [TIP] meeting the completeness criteria of 40 CFR part 51, appendix V, or does not receive EPA approval of a submitted tribal implementation plan." The Navajo Nation has not submitted a regional haze TIP to EPA, and the Navajo Nation is under no deadline to do so.

Plaintiffs allege that on July 22, 2007, EPA provided written notification to the operator of NGS that a regional haze BART analysis was required because the facility was BART-eligible and was also subject-to-BART for specific pollutants. Plaintiffs further allege that EPA's above-referenced 2007 notification constituted a finding by the agency that it was both necessary and appropriate to promulgate BART determinations for NGS without unreasonable delay pursuant to 40 C.F.R. §49.11. Plaintiffs further allege that EPA's failure to promulgate a final BART determination for NGS without unreasonable delay constitutes a failure to perform acts or duties that are not discretionary with the Administrator within the meaning of 42 U.S.C. §7604(a)(2).

Defendants and Intervenor-Defendant contend that EPA has not unreasonably delayed promulgating a final BART determination for NGS, and Defendants contend that EPA has been diligently working on promulgating a comprehensive and thorough BART determination for NGS.

///

///

///

4. Motions

The parties propose to resolve this case at summary judgment. The parties seek to reserve June 21, 2013 for a hearing on their cross-motions for summary judgment. Plaintiffs will not make a motion for discovery, and the parties ask that the April 19, 2013 hearing date for that motion be vacated. The parties also ask that the further Case Management Conference set for May 24, 2013 also be vacated.

5. Amendment of Pleadings

The parties have no plans to move to amend the pleadings.

6. Evidence Preservation

For this type of case, Plaintiffs and Intervenor-Defendant have no documentary evidence that would be subject to this concern.

7. Disclosures

The parties agree that initial disclosures are not appropriate in this case. However, Defendants have provided to Plaintiffs the documents that Defendants believe constitute the administrative record for EPA's activities pertaining to the BART determination for NGS.

8. Discovery

None of the parties will seek discovery in this case.

9. Class Actions

This case is not a class action.

10. Related Cases

There are no cases related to this one in this district or before another court or administrative body.

11. Relief

Plaintiffs seek a declaration that EPA's failure to promulgate a final BART determination for NGS constitutes a failure to perform a nondiscretionary duty without unreasonable delay within the meaning of Clean Air Act Section 304(a)(2), 42 U.S.C. §7604(a)(2), and the tribal authority rule at 40 C.F.R. §49.11. Plaintiffs also seek an Order enjoining the Administrator from continuing to violate the above-described nondiscretionary duties and an Order requiring

the Administrator to issue a final BART determination for NGS by a date certain. Plaintiffs also seek their reasonable costs of litigation, including attorneys' fees, pursuant to 42 U.S.C. §7604(d). Defendants and Intervenor-Defendant contend that EPA has not unreasonably delayed promulgating a final BART determination for NGS, but if the Court determines otherwise, EPA contends that the Court should order EPA to act within a reasonable time.

12. <u>Settlement and ADR</u>

The parties are continuing to explore settlement.

13. <u>Consent to Magistrate Judge For All Purposes</u>

The Defendants have declined.

14. <u>Other References</u>

The parties do not believe this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

15. <u>Narrowing of Issues</u>

No further narrowing is necessary.

16. <u>Expedited Trial Procedure</u>

The parties agree that this case should be resolved by motions for summary judgment. Nevertheless, to the extent all issues are not resolved at summary judgment a trial setting in the fall of 2013 is requested.

17. <u>Scheduling</u>

The parties propose the following schedule regarding cross motions for summary judgment:

| | | |
|---|---|---|
| March 1, 2013: | Plaintiffs' Motion for Summary Judgment (25 pages) |
| April 12, 2013: | Defendants and Intervenor-Defendant's Responses and Cross-Motions for Summary Judgment (25 pages each) |
| May 10, 2013: | Plaintiffs' Combined Response and Reply (30 pages) |
| June 7, 2013: | Defendants and Intervenor-Defendant's Replies (15 pages each) |
| June 21, 2013: | Hearing at 9:00 a.m. |

///

-6-

18. Trial

The parties agree that a trial should not be necessary in this case. Nevertheless, to the extent all issues are not resolved at summary judgment a trial setting in the fall of 2013 is requested.

19. Disclosure of Non-party Interested Entities or Persons

The undersigned certify that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding: Diné CARE, National Parks Conservation Association, George E. Hays, and Reed Zars. On January 10, 2013, Intervenor-Defendant filed its Certification of Interested Entities or Persons.

20. Other

The parties do not know of other matters as may facilitate the just, speedy and inexpensive disposition of this matter.

Counsel for Plaintiffs
DINÉ CARE and NATIONAL PARKS CONSERVATION ASSOCIATION

By   /s George E. Hays
George E. Hays
Reed Zars

DATED: January 31, 2013

Counsel for Defendants
ENVIRONMENTAL PROTECTION AGENCY and LISA P. JACKSON

 /s C. Scott Spear
C. Scott Spear

DATED: January 31, 2013

1
2  <u>CASE MANAGEMENT ORDER</u>
3  The above SECOND AMENDED JOINT CASE MANAGEMENT STATEMENT &
4  PROPOSED ORDER is approved as the Case Management Order for this case and all parties
5  shall comply with its provisions. [In addition, the Court makes the further orders stated below:]
   The May 24, 2013 Case Management Conference is vacated.
6
7  IT IS SO ORDERED.
   Dated:   February 6, 2013                    _____
8                                               UNITED STATES DISTRICT JUDGE
9
10
11
...
28

-9-

Case No. 12-3987-JSW                          SECOND AMENDED [PROPOSED] CASE
                                                        MANAGEMENT ORDER